# SUPREME COURT OF TENNESSEE

### FOR THE

## MIDDLE DIVISION.

## NASHVILLE, DECEMBER TERM, 1915.

*(Continued from Vol. 133.)*

SOUTHERN EXPRESS COMPANY *v.* POTTER BROS.

### (*Nashville.* December Term, 1915.)

1. **CARRIERS. Express company. Duty of delivery.**

The duty of an express company in respect to delivery of consignments differs from that resting on railway carriers, in that its duty of delivery does not terminate on the arrival of the goods at the station of destination, but it is required to deliver the goods to the consignee in person or to his authorized agent at his place of business or residence. (*Post, pp. 3, 4.*)

Case cited and approved: Hutchinson v. U. S. Express Co., 63 W. Va., 128.

2. **CARRIERS. Express company. Delivery. Waiver.**

Where an express company offers to make delivery at the consignee's place of business, and the consignee declines for reasons of his own convenience, the company's liability as a common carrier then terminates, and the consignee has no power to prolong such liability, however inconvenient it may be for him to receive the goods. (*Post, pp. 4, 5.*)

Cases cited and approved: Marshall v. American Exp. Co., 7 Wis., 1; Bullard v. American Exp. Co., 61 Am. St. Rep., 375; Young v. Smith, 3 Dana (Ky.), 91; Southern Exp. Co. v. Holland, 109 Ala., 362; Kremer v. Southern Exp. Co., 46 Tenn., 356; Fenner v. Buffalo, etc., R. Co., 44 N. Y., 505; Blumenthal v. Brainerd, 38 Vt., 402; United Fruit Co. v. New York, etc., Co., 104 Md., 567.

3. CARRIERS. Express company. Warehouseman. Liability. Where an express company offered to make prompt delivery of a consignment of goods, and its liability as carrier was determined by the consignee's request that they be left on the station platform for his convenience, and the company, to protect them from trespassers, put them in the station, its liability was only that of a warehouseman, and, where the station was burned without its fault, it was not liable for the value of the goods. (*Post, pp.* 5, 6.)

FROM WHITE

Appeal from the Circuit Court of White County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.— C. E. SNODGRASS, Judge.

H. CAMP, for plaintiffs.

L. D. HILL, for defendant.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

Potter Bros., a mercantile firm doing business at Sparta, brought this action to recover the value of a steel burial vault consigned to them by express.

The undisputed facts are: That the vault reached Sparta about two o'clock in the afternoon. The express company at that place had in its employ a driver whose duty it was to deliver packages to consignees who lived within the corporate limits. Shortly after the vault arrived at the depot, in which was the express office and wareroom this employee delivered several small packages to the firm, and at the same time collected the carriage charges on those packages and on

the vault, informing one of the firm that the vault had arrived at the depot, and that he (the driver) was going back to the depot for another load of express matter, and would then deliver the vault at the business house of Potter Bros. A member of the firm signed the delivery book for the vault, and, as he testifies, told the driver that "it would not be necessary to handle the vault but once and to leave it on the platform outside the depot," that the vault was to be taken to a cemetery outside of delivery limits, and that the firm's wagon would come and get the vault and take it directly to the cemetery for use the next day.

The driver at nightfall, instead of leaving the vault on the platform, put it inside the warehouse, where all express matter was stored for safe-keeping.

The depot (including the platform) was destroyed by fire during the night of the same day, and the only proof on the point is to the effect that the vault would have been rendered worthless by the fire if it had been left on the platform.

The circuit judge and court of civil appeals have held the express company liable as carrier, and therefore insurer. If the vault was held by the company as warehouseman at the time of the fire, it is not contended that culpable negligence on its part is shown.

The duty of an express company in respect of a delivery of consigned articles differs, usually and here, from that resting on railway carriers, in that it is required to deliver the goods to the consignee in person, or to his authorized agent, at his place of business or

residence; the duty of carriage not terminating on the arrival of the goods at the station of destination. *Hutchinson* v. *U. S. Express Co.,* 63 W. Va., 128, 59 S. E., 949, 14 L. R. A. (N. S.), 393, and note; Hutchinson on Carriers, sec. 716; 6 Cyc. 454.

However, the rule is subject to qualifications. One of these is that a delivery at such a place of business may be waived by the consignee. Where there is an offer to make delivery, declined by the consignee in order to serve his convenience, the company's "liability as a common carrier is from that moment at an end, and the consignee has no power to prolong that liability, however inconvenient it may be for him to receive the goods." 4 R. C. L., sec. 281; *Marshall* v. *American Express Co.,* 7 Wis., 1, 73 Am. Dec., 381; note to *Bullard* v. *American Exp. Co.,* 61 Am. St. Rep., 375; *Young* v. *Smith,* 3 Dana (Ky.), 91, 28 Am. Dec., 57, 60; *Southern Exp. Co.* v. *Holland,* 109 Ala., 362, 19 South., 66; *Kremer* v. *Southern Exp. Co.,* 6 Cold. (46 Tenn.), 356.

In this case the company's offer of prompt delivery was followed by the consignee's request that the vault be left where it then laid—on the depot platform—so that its further movements therefrom to the cemetery might be made by the servants of the consignees. This terminated the liability of the carrier.

"Where the carrier is ready to deliver the goods, but on account of the lateness of the hour they are left in the depot overnight, at the consignee's request, although probably for the convenience of both parties,

the carrier remains liable thereafter, as warehouse-man only, without regard to the length of time that has elapsed since the arrival of the goods. 5 Am. & Eng. Encyc. of Law (2d. Ed.), 273, citing *Fenner* v. *Buffalo, etc., R. Co.,* 44 N. Y., 505, 4 Am. Rep., 709; *Blumenthal* v. *Brainerd,* 38 Vt., 402, 91 Am. Dec., 349. The reason for this is obvious. The carrier is entitled to complete its contract and to release itself from its liability as insurer of the goods, by promptly delivering them upon their arrival. If, being ready and offering to make the delivery, it is induced by the consignee not to perform that part of its duty, and not to perform it merely for the purpose of serving the convenience of the consignee, the latter cannot be permitted, should the goods perish after they would have been delivered but for the request that they should not be delivered, to contend that their nondelivery, occasioned by their destruction in the interim, was a breach of the carrier's original duty to deliver,'' *United Fruit Co.* v. *New York, etc., Co.,* 104 Md., 567, 65 Atl., 415, 8 L. R. A. (N. S.), 240, 10 Ann. Cas., 437; 6 Cyc., 456.

The fundamental error in the argument of the court of civil appeals is the assumption that the original duty to deliver had not been performed and would not be until the vault was placed on the platform. By the undisputed testimony, it was on the platform when the consignee's instructions were given that it be left there. Its only movement from that place was into

the warehouse. The duty of carrier and the liability of insurer being then at an end, that step on the part of the company was taken in its capacity of warehouseman. The manifest and avowed purpose was to safeguard the vault from injury by trespassers.

Writ of *certiorari* granted. Reversed, with judgment here for the express company.