# Western Union Telegraph Co. *v.* Chamblee.

*Action against Telegraph Company to recover Damages for Negligent Transmission of Message.*

1. *Telegraph company; negligence in transmission of message; sendee's duty.*—Where, owing to the negligence of a telegraph company in transmitting a message to the sender's brokers to buy cotton for him, they failed to buy, the sender owes the telegraph company no duty to purchase cotton on the next day at the lowest price to prevent or lessen any loss or damage sustained by the negligence in the transmission of the message.

2. *Same; same; same.*—The sender of a telegraph message owes no duty to the telegraph company to inquire, from it or otherwise, whether his message was correctly transmitted and received; and his failure to do this does not constitute negligence which will prevent his recovery for the company's failure to properly transmit the message.

3. *Same; conditions limiting liability of telegraph company on unrepeated messages invalid.*—Conditions expressed in the printed blanks on which telegraph messages are required to be written, limiting the liability of the company in the case of an unrepeated message to the amount received for sending the same, did not exempt the company from liability for the negligence of its agents in the transmission or delivery of a message; and a plea which sets up these conditions, but does

not negative such negligence, is defective and subject to demurrer.

4. *Contracts of sale for future delivery; when presumed valid.*—A sale under a contract for future delivery will be presumed valid, unless it is apparent that no purchase and delivery were intended; and this is true though the vendor neither has the goods in hand, nor has contracted for the purchase of them, and has no expectation of acquiring them otherwise than by their purchase at some day before the date of delivery.

5. *Pleading and practice; new trial; absence of counsel.*—A motion for a new trial on account of the absence of counsel, who were engaged in the trial of other causes in a distant city, is properly overruled where it does not appear that said counsel made any effort to have the cases in which they were engaged laid over in order to try the one in question, and there is no sufficient reason shown why one of the members of the firm could not have been present at the trial, but it appears that they depended upon the courtesy of the opposing counsel to delay the trial, which would have entailed considerable expense to his client, and it further appears that there were other capable attorneys present who could have represented the absent counsel.

APPEAL from the Circuit Court of Morgan.

Tried before the Hon. H. C. SPEAKE.

This action was brought by the appellee against the appellant, to recover damages for a mistake committed by defendant in transmitting a telegram from plaintiff at Forkville, Morgan County, Alabama, to the Birmingham Exchange Company at Birmingham, Alabama. The plaintiff, on September 15, 1896, delivered to the defendant's office at Forkville a telegram, which exclusive of date and signature, was as follows: "To Birmingham Exchange Co., Birmingham, Ala. If can buy cotton Jany. 25, close pork buy cotton," which was a direction to close out plaintiff's holding in pork and buy cotton, if it could be purchased at 8 25-100 cents per pound. This message, after having been transmitted was delivered to the Birmingham Exchange Company and read as follows: "If can buy cotton Jany. 20, close pork buy cotton." The plaintiff claims that by reason of this mistake, he lost $140, in that January cotton on the day the message was sent went down to 8 25-100 cents per pound,

but did not go down to 8 20-100, and that the Birmingham Exchange Company did not sell the pork and buy the cotton for plaintiff for the reason that the telegram read "20" instead of "25," and that on the next day the plaintiff telegraphed the Birmingham Exchange Co. as follows: "If I am in cotton close at 50 and wire." It was then averred in the complaint that not being in cotton, he lost the difference between what it could have been purchased at "25" on the 15th and what it would have sold for on the 16th, and for the recovery of this difference the present suit is brought. To this complaint the defendant pleaded the general issue and five special pleas. The substance of the 5th and 6th pleas are sufficiently stated in the opinion. The 2d, 3d and 4th pleas were as follows: "2. That the plaintiff himself was guilty of negligence in not exercising reasonable diligence to prevent or lessen his loss in that he failed to purchase January cotton on the 16th of September, 1896, when it reached the lowest point on that day, to-wit: 8.32, and such negligence contributed proximately to his injury.

"3. That the plaintiff himself was guilty of negligence in not exercising reasonable diligence to find out on the 15th of September, 1896, whether or not the Birmingham Exchange Company had received his telegram correctly and had purchased said January cotton for him at 8.25; which negligence on his part contributed proximately to his loss.

"4th. That one of the provisions of the contract entered into by and between the plaintiff and defendant when plaintiff delivered to defendant his said message on the 15th of September, 1896, was as follows: 'To guard against mistakes or delays, the sender of a message should order it repeated, that is, telegraphed back to the original office for comparison. For this, one-half the regular rate is charged in addition. It is agreed between the sender of the following message and this company, that said company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery of any unrepeated message, beyond the amount received for sending the same.' And defendant further

avers that the plaintiff, not having had said message re- peated, can not recover any damages beyond the amount he paid to defendant for the transmission of the said message, to-wit, 27 cents." To the second plea, the plain- tiff demurred upon the following grounds: 1st. The plea does not set out specifically and definitely the facts constituting the alleged contributory negligence. 2d. It does not set forth any fact or facts constituting any de- fense whatever to plaintiff's complaint. 3d. The mat- ters and things set forth in said plea do not furnish or constitute any defense for the negligence of the defend- ant set up and specified in plaintiff's complaint.

To the third plea the plaintiff demurred upon the fol- lowing grounds: 1st. There is no fact or facts stated in said plea which, if true, would furnish any defense for the negligence of the defendant alleged in plaintiff's complaint. 2d. It does not set out and allege in said plea that it was the duty of the plaintiff to find out on Sep- tember 15th, whether the Birmingham Exchange Com- pany had received his telegram correctly and had pur- chased January cotton for him at 8.25. 3d. It was not the duty of the plaintiff to inquire on September 15th or at any other time, whether or not the Birmingham Ex- change Company had received his telegram correctly. 4th. The plaintiff had a right to rely upon the correct transmission of said message by the defendant.

To the fourth plea the plaintiff demurred upon the fol- lowing grounds: 1st. The provisions of the contract set up in said plea show it to be an alleged contract which is against public policy and therefore void. 2d. Because the defendant corporation can not exempt itself from its negligence or the negligence of its employés by such a stipulation as is set out in said plea. 3d. There are no facts set up in said plea which constitute an excuse or defense for the negligence mentioned and set out in the plaintiff's complaint. These demurrers to the 2d, 3d, and 4th pleas were sustained, and the cause was tried upon issue joined upon the 1st, 5th and 6th pleas.

There were verdict and judgment for the plaintiff. Thereupon the defendant made a motion for a new trial. The facts pertaining to the motion for a new trial are

sufficiently stated in the opinion. Upon the submission of the cause upon the facts shown and the motion for a new trial, the court overruled said motion.

To this judgment the defendant duly excepted. The defendant appeals, and assigns as error the rulings of the court in sustaining the demurrers to the 2d, 3d and 4th pleas and in overruling the motion of the defendants for a new trial.

WALKER, PORTER & WALKER, for appellant.—It was appellee's duty to try to find out on the 15th of September, whether or not the Birmingham Exchange Company had made the purchase as directed in his telegram. He could not send a telegram like this and then sit still for a day or two without an answer from the party to whom he sent it—or without inquiring further of appellant or of the Birmingham Exchange Company. If these contentions are right then said pleas numbered 2 and 3 were good defenses, and the court below erred in sustaining demurrers to each one of them.—*W. U. Tel. Co. v. Reid,* 10 S. E. Rep. 919; Gray on Communication by Telegraph, § 100; *Telegraph Co. v. Hobson,* 15 Gratt. (Va.) 122; *W. U. Tel. Co. v. Berdine,* 21 S. W. Rep. 982; *Railway Co. v. Loonie,* 18 S. W. Rep. 221; *W. U. Tel. Co. v. Hearne,* 26 S W. Rep. 478; *W. U. Tel. Co. v. Wright,* 18 Ill. App. 337; *W. U. Tel. Co. v. Terrell,* 30 S. W. Rep. 70.

The plea setting up the failure of the defendant to have the message repeated presented a defense to the action. This is a case where a repetition of the telegram would have corrected the mistake. It is not a case where the telegram was sent correctly just as it was delivered to the company, and then delayed in the sending, or in the delivery to the sendee after reaching the company's office, in the place where he resided. In such a case repetition might not do any good. But the case at bar is exactly the kind intended to be met by this condition. A party, with this condition in his contract, should not send an important telegram which is so capable of being easily missent, and not comply with that simple condition, which would absolutely insure correctness and certainty. If the appellee had ordered said telegram

repeated, he would not have suffered any loss.—*Breese v. U. S. Tel. Co.*, 8 Amer. Rep. 529; *Redpath v. W. U. Tel. Co.*, 112 Mass. 71; *Grace v. Adams*, 100 Mass. 505; *Grinnell v. W. U. Tel. Co.*, 113 Mass. 299; *W. U. Tel. Co. v. Henderson*, 89 Ala. 510.

ARTHUR L. BROWN and E. W. GODBEY, *contra.* The absence of any obligation of the sender of a message to repeat the same justified the condemnation of plea No. 4. Telegraph companies can not, by conditions expressed in the printed blanks on which messages are required to be written, limit their liability in the case of unrepeated messages; and such conditions do not exempt the company from liability for the negligence of its agents in incorrectly transmitting messages.—*Amer. Un. Tel. Co. v. Daughtery*, 89 Ala. 191; *Western Un. Tel. Co. v. Crawford*, 110 Ala. 460; *Ayer v. W. U. Tel. Co.*, 1 Amer. St. Rep. 353; *W. U. Tel. Co. v. Crall*, 5 Amer. St. Rep. 795; *Gillis v. W. U. Tel. Co.*, 15 Amer. St. Rep. 917.

The failure of defendant's attorneys to request a postponement of the Birmingham cases after their agreement setting this case for trial; their message that their entire firm was engaged in the Federal Court; their failure to inform the court below that one of their number was sick; the actual engagement in only two trials in Birmingham of the members of said firm, while none appeared in this case; the abundance of competent local counsel at Decatur; the ability of one of said firm to have reached Decatur after his Birmingham engagement had terminated, and before the Morgan circuit court entered upon any trial succeeding this; his failure to do, or to attempt to do this; the failure of defendant's counsel to inform plaintiff or his attorney, that the agreement to try the case would not be complied with; the absence of any proof of inability to attend, rendered possible no other action by the court than that taken.—*Brock v. S. & N. Ala. R. R. Co.*, 65 Ala. 79; *Broda v. Greenwald*, 66 Ala. 538; Freeman on Judgments, 508; *Holloway v. Holloway*, 10 Amer. St. Rep. 348; *McLeod v. Shelly M. & I. Co.*, 108 Ala. 80; *White v. Ryan*, 31 Ala. 400; *Shields v. Burns*, 31 Ala. 535; *Mock v. Cundiff*, 6 Port. 24.

28

It is no defense to this action that the contemplated contract was one of a sale for future delivery.—*Roots v. Cohen*, 12 So. Rep. (Miss.) 593; *Peet v. Hatcher*, 112 Ala. 514; *Hawley v. Bibb*, 69 Ala. 52; *Hubbard v. Sayre*, 105 Ala. 480.

HARALSON, J.—1. The demurrers to defendant's second and third pleas were properly sustained. The second professes to be a plea in bar, but really, it is one in mitigation of damages. It does not go to all, but to a part of the damages claimed, and should have been so pleaded. If plaintiff was, under any circumstances, under any legal obligation to defendant to attempt to partially recoup his loss in consequence of defendant's failure to comply with its contract in sending the message, it is not averred in said plea that plaintiff knew or was informed that he could thus protect himself. But, plaintiff was not bound to anticipate that defendant would not comply with its contract and he owed defendant no such duty as that averred in the 2d plea, arising out of such supposed obligation. Nor did plaintiff owe the defendant the duty, as averred in the third plea, to exercise diligence to ascertain by inquiry from defendant or otherwise, that the Birmingham Exchange Company, the sendee of the message, had received his telegram correctly and had purchased the cotton as instructed by him. This he might have done for his own satisfaction, but not as a duty he owed defendant.—*W. U. Tel. Co. v. Crawford*, 110 Ala. 460, 467; *Daughtery v. A. U. Tel. Co.*, 89 Ala. 191; *W. U. T. Co. v. Stephens*, 16 S. W. Rep. 1095; 25 Am. & Eng. Encyc. Law, 809.

2. It may be stated generally as a correct rule, that a telegraph company, in accepting a message for transmission, is under obligation by its contract with the sender of the message, to transmit it correctly and without delay, and for a failure to do so, is liable to the sender for the damages, of which its negligence was the proximate cause. It is also well settled, that such a company is not, like a common carrier, an insurer against all accidents.—25 Am. & Eng. Encyc. of Law, 778, and authorities cited; Thompson on Law of Electricity, § 139.

[Western Union Telegraph Co. v. Chamblee.]

In respect to the contract for the repetition of messages, and the release of the company from damages, if mistakes occur in the transmission, unless the sender requires the message to be repeated, such as is set up in the 4th plea, courts have taken different views, but the great weight of authority, including our own court, is opposed to the validity of such a stipulation. The rule in respect to such, is well settled to be, that "On principle it would seem that the stipulation is invalid, in that it opposed the recognized principle that all individuals or corporations engaged in a public business cannot be allowed to contract against liability for the consequences of its own negligence, or willful wrong-doing. And since it appears that the stipulation is not, as a matter of fact, provided with a view of securing correctness in the transmission of messages, but rather to protect the company from liability, it cannot be regarded as a reasonable regulation which it is in the company's power to provide. Regarded as a contract, the stipulation is void as having been induced by a species of moral duress. The weight of authority is, therefore, opposed to upholding such a stipulation, and declines to sustain or enforce it."—25 Am. & Eng. Ency. Law, 791, 792, where authorities on the subject are collated; Thompson on Electricity, 241; *A. U. Tel. Co. v. Daughtery*, 89 Ala. 191. A *prima facie* case is made out by the plaintiff against the company for failing to correctly transmit a message, by showing that the message delivered was not a copy of the one sent, when defendant must exonerate itself by showing that the breach was not due to negligence on its part. *Pearsall v. W. U. Tel. Co.*, 124 N. Y. 256; s. c. 21 Am. St. Rep. 662; *W. U. Tel. Co. v. Dubois*, 128 Ill. 248; Gray on Communications by Tel., § § 26, 53, 77; Sherman & Redfield on Neg., § 542; 3 Suth. on Damages, § 957; Thompson on Neg., 837.

The demurrer to the 4th plea was properly sustained.

3. Issue was joined in the case on the plea of the general issue, and on the 5th and 6th pleas; the 5th setting up that the contract sued on was founded on a gambling consideration, and the 6th, that the contract sought to be made by the plaintiff with the Birmingham Exchange

Company, the sendee of the message, was a contract founded on a gambling consideration, and was illegal and void. What the evidence introduced on the trial was, we are not informed by bill of exceptions. In the motion for a new trial, we are informed, that the cause was tried before a jury by the plaintiff on evidence adduced to prove his case, in the absence of defendant's counsel. Judgment was rendered for plaintiff for the sum of $122.65 and costs.

The defendant afterwards moved the court for a new trial, which was overruled. The cause is here on bill of exceptions reserved on the trial of that motion. It is based on the ground that the attorneys for the defendant were absent by alleged unavoidable delay in consequence of being engaged in the trial of two causes in Birmingham, one in the Federal and the other in the city court in that city, and on the ground that plaintiff ought not to be allowed to recover, on account of the gaming transaction in which he was engaged in sending his messages.

In the first place, we may dispose of the latter question by stating, that the messages sent by plaintiff to his correspondent in Birmingham, over defendant's line, do not conclusively reveal an intention on the part of plaintiff to deal in what are termed "futures." Such contracts, as the authorities generally concur in holding, are valid, though the vendor neither has the goods in hand, nor has contracted for the purchase of them, and has no expectation of acquiring them otherwise than by their purchase at some date before the day of delivery. But if it is apparent that no purchase and delivery were intended, but that the transaction should be closed up on the basis of the market value of the goods at the date of delivery, the losing party paying the other the difference, it is a gambling transaction, it is contrary to public policy and void at common law, in the absence of a statute even denouncing it as such.—*Hawley v. Bibb,* 69 Ala. 52; *Lee v. Boyd,* 86 Ala. 283. The demurrers to the 5th and 6th pleas were withdrawn, and issue taken on them. It may be, in a suit of this character, they were subject to demurrer; but this question is not before us, and we, therefore, do not decide it.

4. The law firm employed by defendant to defend its suit, consisted of three members, all residing in Birmingham. The case was originally set for trial on October 26, 1897, but by an agreement of counsel on both sides, and with the consent of the court, it was reset for November 3, following. The attorneys for defendant did not appear at Decatur on the last day named. One of them telegraphed on the 2d, to the clerk of the court in Decatur: "We are engaged in United States Court. Pretty sure can be in Decatur Friday or Saturday;" requesting the clerk to show the message to Mr. Brown, attorney for plaintiff, and have case passed to Friday or Saturday. The clerk replied same day, that Brown was not there and judge refused to make order in his absence. Brown lived in Hartselle, Ala. On the 3d, the same attorney telegraphed to Brown in Decatur: "If case reached please pass until tomorrow. Our firm engaged in city and United States courts. If I cannot come will send some lawyer in my place. If case will not be reached tomorrow, wire me today." To this Brown replied: "Telegram received after case was disposed of this forenoon. Judgment against defendant for about $120." Defendant's attorney then telegraphed to Brown or Judge Speake, expressing surprise at the taking of the judgment after seeing his telegram, and stating that he would be up that night with his witnesses, ready to try the case, and requesting Brown to keep his witnesses there or get them back, if they had gone. To this Brown replied: "Witnesses are gone. Heard nothing of your telegram until my client and witnesses were here ready and demanding trial. Big damage suit against Morgan county on trial, which will last several days."

It is not shown that defendant's counsel attempted to have either of their cases in the city or Federal Court laid over, in order that one of them might go to the Decatur court to try this cause, which had been previously set by their consent on the 3d of November. Reasons are stated why one of the counsel engaged in the city court case was needed to try that cause, and another to try the cause in the Federal court, but no facts are shown why it was necessary that the third one should remain in Bir-

mingham on account of either of said causes, further than the expression of a conclusion that it was necessary for him to do so. It is not shown why defendant's counsel, when apprehensive of a conflict in the trials of their causes in Birmingham and at Decatur, did not communicate with plaintiff and his attorney, Brown, both of whom lived at Hartselle, before the latter left home to come to Decatur to try said cause, and attempt to make arrangements for the postponement of this cause. It appears they presumed it would be done as a matter of courtesy, and they delayed timely effort to effect such an arrangement. The attorney of defendant, who did the correspondence by wire, in one of his messages to plaintiff's attorney, stated that if he could not come at a certain time, if the case was laid over till then, he would send another attorney to represent him. He does not show, that he might not have done this and had the case tried when set. It also appears, there were other capable lawyers living in Decatur, who had no connection with this case, who, for aught appearing, could have represented defendant. It was the duty of defendant or his attorneys to have made some arrangement for the trial of the cause, by the appearance of one of them, or by a suitable representative for the purpose, and not to have depended on a courtesy to be shown them by opposing counsel, especially when it would have been at considerable expense to his client to do so. We will not attempt to deal with the question of courtesy between opposing counsel. The judge who tried this cause, sitting as a fair arbiter in the premises, with all the facts before him, decided that it was not his duty to grant a new trial, and we are not unable to hold that he erred in so doing. This conclusion is fully justified by previous decisions of this court.—*Brock v. S. & N. A. R. R. Co.,* 65 Ala. 79; *Broda v. Greenwald,* 66 Ala. 538; *McLeod v. Shelly Mfg. & Imp. Co.,* 108 Ala. 81.

Affirmed.